# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA J. UDELL, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | CASE NO. 3:12-CV-02548-H-JMA <br><br> **ORDER:** <br><br> **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND** <br><br> [Doc. No. 10] <br><br> **(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 14] |

On October 19, 2012, Plaintiff Paula J. Udell ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g), requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"). (Doc. No. 1.) On February 5, 2013, Plaintiff filed a motion for summary judgment, asking the Court to reverse the final decision of the Commissioner, or, in the alternative, vacate the decision and remand the case to the Social Security Administration for further proceedings. (Doc. No. 10.) On March 12, 2013, the Commissioner filed a cross-motion for summary judgment and response in opposition to Plaintiff's motion.

(Doc. Nos. 14, 15.) On March 26, 2013, Plaintiff filed a response in opposition to Defendant's cross-motion and a reply to Defendant's opposition. (Doc. Nos. 18-19.) For the following reasons, the Court denies Plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and affirms the decision of the Administrative Law Judge ("ALJ").

## **Background**

On July 16, 2009, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income pursuant to Title II and Part A of Title XVIII of the Social Security Act. (Doc. No. 8, Administrative Record ("AR") 153-54.) Plaintiff claimed to have been disabled since January 1, 1996. (Id.) The state agency that makes disability decisions for the Commissioner (20 C.F.R. § 406.1503) denied Plaintiff's application initially and on reconsideration, and Plaintiff requested a hearing. (AR 17-19, 82-96.)

On March 11, 2011, Plaintiff, who was represented by counsel, testified at a hearing. (AR 49-79.) The ALJ also heard testimony from Plaintiff's brother, her sister-in-law, and a vocational expert. (Id.) Plaintiff did not call a medical expert to testify and only presented the ALJ with her medical records, most of which were generated after the date she was last insured. (Id.)

On March 25, 2011, the ALJ issued a decision, finding Plaintiff not disabled. (AR 30-41.) The ALJ first found that Plaintiff had not engaged in gainful activity since January 1, 1996, the alleged onset date, through her date last insured of September 30, 2000. (AR 35.) Before January 1, 1996, Plaintiff worked as a school teacher for 19 years. (AR 36-37.) The ALJ also noted that, after the alleged onset date, Plaintiff worked as a hotel manager for the family business without pay for five years. (AR 36; see also AR 55-59, 62-63, 69-70.) The ALJ next found that Plaintiff had severe

impairments through the date last insured.[1]  (Id.)  After considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[2] except that she could perform occasional postural activities, not walk on uneven terrain, not climb except occasionally to climb stairs, not work at heights, and not work around dangerous machinery.  (AR 35-37.)  Finally, the ALJ determined that based on the testimony of a vocational expert and considering Plaintiff's age,[3] education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed.  (AR 37-38.)  The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from January 1, 1996, the alleged onset date, through September 30, 2000, the date last insured."  (Id.)  In reaching his conclusions, the ALJ considered the entire record, including testimony from Plaintiff, her brother, her sister-in-law, and the vocational expert, and Plaintiff's medical records.  (AR 35-38.)

On August 16, 2012, the Appeals Council denied Plaintiff's request for review, rendering the March 25, 2011 decision a final decision of the Commissioner and subject to judicial review.  (AR 1-3.)  See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.  On appeal, Plaintiff introduced new medical evidence in the form of an MRI scan from 2003.  (AR 215.)  The Appeals Council considered the new medical information, but concluded that it did not affect the decision of whether Plaintiff was disabled at the time Plaintiff was

---

[1] The severe impairments involved Plaintiff's wrist, left ankle, left foot, and a hammertoe.  (AR 35.)

[2] 20 C.F.R. § 404.1567(a) provides:  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[3] Plaintiff was forty-seven (47) years old at the time of her alleged disability onset date.  (AR 37.)

1  last insured. (AR 2.)

2  On October 19, 2012, Plaintiff filed a complaint pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), requesting judicial review of the March 25, 2011 decision. (Doc. No. 1.)

**Discussion**

## I. Legal Standards

### A. Standards for Determining Disability

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) he suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C. § 423(d); Tackett v. Apfell, 180 F.3d 1094, 1098 (9th Cir. 1999). An applicant must meet both requirements to be "disabled." Id. The Social Security Regulations set forth a five-step sequential evaluation process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520; 416.920. The Ninth Circuit summarized this process as follows:

> The burden of proof is on the claimant as to steps one to four. As to step five, the burden shifts to the Commissioner. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. The five steps are:
>
> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled"

and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Tackett, 180 F.3d at 1098-99; see 20 C.F.R. §§ 404.1520, 416.920.

**B.     Standards for Review of Social Security Determinations**

Unsuccessful applicants may seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). Upon review, the Commissioner's decision must be affirmed if it was supported by substantial evidence and based on proper legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "more than a mere scintilla" but less than a preponderance and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Id.; Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). "Where evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." Mayes v. Massanar, 276 F.3d 453, 459 (9th Cir. 2001).

In addition, a reviewing court will not reverse an ALJ's decision for harmless

error. Tommassetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). An error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Id. (internal quotation marks omitted). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

**II. Analysis**

Plaintiff contends that the ALJ erred in determining Plaintiff's residual functional capacity, erred in determining that Plaintiff could do other work, and erred by failing to properly determine the date of onset. (Doc. No. 10-1 at 6-7; Doc. No. 18 at 1.) Defendant disagrees. (Doc. Nos. 14, 15.)

**A.     The Determination of Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ erred by failing to find as part of Plaintiff's residual functional capacity determination that she possessed limitations related to her vision, speech, hands, and other neurological impairments. (Doc. No. 10-1 at 13.) In response, Defendant argues that the ALJ properly considered the evidence in determining Plaintiff's residual functional capacity and that any error was harmless. (Doc. No. 14-1 at 12-23.)

I.     Legal Standards

In conducting a residual functional capacity assessment, an ALJ must consider the combined effects of a claimant's medically determinable impairments on his ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant evidence as well as the combined effects of all of the claimant's impairments, even those that are not "severe." 20 C.F.R. § 404.1545(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). The ALJ need not consider properly rejected evidence or subjective complaints. See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("ALJ was not required to incorporate evidence from the opinions of [plaintiff's] treating physicians,

which were permissibly discounted"); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding the ALJ's residual functional capacity determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints").

The claimant bears the burden of "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [her] medical impairment(s)." 20 C.F.R. § 404.1512(a); see also Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (The claimant "is ultimately responsible for providing the evidence to be used in making the RFC finding."). In addition, the claimant must show that her impairments existed prior to her date last insured. See Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984) (holding that only disabilities existing before date last insured establish entitlement to disability insurance benefits); Morgan v. Sullivan, 945 F.2d 1079, 1081 (9th Cir. 1991). Courts "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." Bayliss, 427 F.3d at 1217. "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

### ii. Analysis

As an initial matter, Plaintiff argues that the ALJ failed to consider the entire record. (Doc. No. 10-1 at 13.) To the contrary, the ALJ's opinion stated that he considered the entire record in determining Plaintiff's residual functional capacity. (AR 33, 35.) The ALJ also stated that he considered all of Plaintiff's symptoms and the extent they could reasonably be accepted as consistent with the evidence. (Id.) An "ALJ does not need to 'discuss every piece of evidence'" and "is not required to discuss evidence that is neither significant nor probative[.]" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Therefore, the ALJ did not err simply because he did not discuss all the pieces of evidence in his opinion.

In addition, Plaintiff argues that the Court should infer that the ALJ applied the wrong legal standard and did not consider certain medical reports because they were generated after the date Plaintiff was last insured. (Doc. No. 10-1 at 6; Doc. No. 18 at 13-14.) Medical evaluations made after the expiration of a claimant's insured status may be relevant to an evaluation of the pre-expiration conditions. Sampson v. Chater, 103 F.3d 918, 922 (9th Cir. 1996); Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). But, a review of the opinion shows that the ALJ did not apply an incorrect legal standard because he considered medical evidence from after the date Plaintiff was last insured. (See, e.g., AR 36 (citing a doctor's note from March 19, 2001).)

Turning to Plaintiff's specific argument that the ALJ erred in failing to find that Plaintiff had vision, speech, hand, and neurological impairments, Plaintiff's argument is not supported by the record. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." Bayliss, 427 F.3d at 1217; accord Fleming v. Comm'r of SSA, 500 Fed. Appx. 577, 579 (9th Cir. 2012). Moreover, Plaintiff bears the burden of furnishing medical and other evidence establishing that her impairments existed prior to date she was last insured, September 30, 2000.[4] See 20 C.F.R. § 404.1512(a); Widmark, 454 F.3d at 1068; Vincent, 739 F.2d at 1394.

Plaintiff's arguments about her visual, hand, speech and neurological impairments are primarily based on evidence that she suffered an aneurysm and resulting complications when she was three years old.[5] (Doc. No. 10-1 at 15-16 (citing

---

[4] The ALJ correctly noted that Plaintiffs' medical records from prior to September 30, 2000, her date last insured, were sparse. (AR 36.)

[5] Dr. Stabile's November 2001 medical notes state that Plaintiff has some weakness and speech impairments due to her aneurysm at age three. (AR 320.) Dr. Gore's May 2002 medical notes state that Plaintiff has weakness, decreased sensation, and difficulty walking due to her previous aneurysm. (AR 317-18.) In addition, Plaintiff's brother testified that Plaintiff's limitations dated back to her accident when she was three years old. (AR 64-65.)

AR 294-97, 311-14, 317-21).) The ALJ noted that there was evidence in the record that Plaintiff suffered an injury when she was three with resulting complications. (AR 65.) The record also reflects that the ALJ considered all the evidence in the record. (AR 33, 35.) The record shows that, despite Plaintiff's earlier aneurysm, she was able to obtain a college education and work as a school teacher for 19 years–a job that is considered under the Dictionary of Occupational Titles ("DOT") to be a skilled and light exertion position. (AR 36-37, 60-61, 74, 160-62.) Cf. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (explaining that "light" work is a more strenuous category than "sedentary"). The ALJ also noted that Plaintiff also worked as a hotel manager for the family business without pay for five years after her job as a school teacher. (AR 36; see also AR 55-59, 62-63, 69-70.) Therefore, the ALJ properly determined Plaintiff's residual functional capacity. See 20 C.F.R. 404.1529(c)(3) (stating that the claimant's "prior work record" is relevant in evaluating the claimant's symptoms and determining disability); see, e.g., Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (finding that the ALJ properly discounted the claimant's testimony about her limitations in light of her work history).

In addition, with respect to Plaintiff's claim about her hands, the ALJ noted that the medical records from the relevant time period showed that Plaintiff had no functional limitations in her upper extremities and that there was no evidence of acute injury. (AR 36-37; see also AR 337-38 (May 1999 note from Dr. O'Connell stating that plaintiff's function in her wrists and fingers was normal and that Plaintiff had done very well from surgery from ten years prior); AR 332 (June 1999 note from Dr. O'Connell stating that Plaintiff's clinical examination of her left hand was "unchanged from her previous exam with a totally benign neurological exam"); AR 330 (June 1999 note from Dr. Roberts stating that he performed a nerve conduction study on Plaintiff's upper extremities and the study was within normal limits); AR 322-23 (March 2011 note from Dr. O'Connell stating that plaintiff's function in her wrists and fingers was normal and

that Plaintiff was well healed from her prior surgery).) In addition, Plaintiff stated in her Disability Report that her prior work as a school teacher required her to write, type and handle small objects for about two hours a day, including the writing and completing of reports. (AR 172.) Therefore, the ALJ could properly reject evidence that contradicted the medical records and Plaintiff's work history. See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (stating that a claimant must provide objective medical evidence of an impairment); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (explaining that an ALJ may discount lay testimony that conflicts with medical evidence); Thomas, 278 F.3d at 959.

Also, with respect to Plaintiff's claims about her vision and speech, Plaintiff has failed to show the ALJ's determination could amount to harmful error. See Molina, 674 F.3d at 1111 (explaining that the claimant bears the burden of showing that the ALJ's error was harmful). Plaintiff fails to explain how her speech or vision in one eye would prevent or limit her from performing sedentary unskilled work. Cf. SSR 96-9p, 1996 SSR LEXIS 6 ("Basic communication is all that is needed to do unskilled work. The ability . . . to communicate simple information is sufficient."[6]); id. (explaining that visual limitations are relevant to determining if the claimant can perform sedentary unskilled work if they "prevent[] an individual from seeing the small objects involved in most sedentary unskilled work"[7]). Similarly, Plaintiff fails to explain how her lower left leg symptoms would require additional limitations to her residual functional capacity assessment. The ALJ determined, based on the record, that Plaintiff's residual functional capacity was for sedentary work with the additional limitations of only occasional postural activities, no walking on uneven terrain, no climbing except

---

[6] The Court notes Plaintiff was able to communicate with the ALJ at the hearing. (See AR 55-61, 76-77.)

[7] The Court notes that Plaintiff admits that she has one relatively good eye. (Doc. No. 10-1 at 16 n.11; see also AR 383.) The record also shows that Plaintiff wears corrective lenses. (AR 385.)

occasionally stairs, no working at heights, and no working around dangerous machinery. (AR 35.) Indeed, based on these additional limitations, the ALJ accounted for Plaintiff's impairments in determining her residual functional capacity. An error is harmful only if it would affect the ultimate nondisability determination. Tommasetti, 533 F.3d at 1038; Molina, 674 F.3d at 1116-17. Accordingly, the ALJ did not err in determining Plaintiff's residual functional capacity and his decision is supported by substantial evidence. See Bayliss, 427 F.3d at 1217.

**B. Determination of Whether Other Work Existed In Significant Numbers In The National Economy**

Plaintiff argues that the ALJ's reliance on the vocational expert's testimony that Plaintiff could perform three jobs which existed in significant numbers in the national economy constitutes reversible error. (Doc. No. 10 at 7-12.) In particular, Plaintiff argues that because her limitations qualified her for only one of the three jobs that the vocational expert testified she could perform, the ALJ erred in finding that work existed in significant numbers in the national economy. (Id. at 11.) In response, Defendant argues that any error was harmless because the vocational expert correctly found that Plaintiff could perform work that existed in significant numbers in the national economy. (Doc. No. 14-1 at 9-12.)

At step five, the Commissioner bears the burden of proving that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)). To meet this burden the Commissioner may rely on the testimony of a vocational expert. Id. at 1100-01.

Here, the vocational expert testified that after taking into consideration Plaintiff's residual functional capacity, age, education, and work experience, Plaintiff could perform work as an information clerk, electronic bench assembler, and credit checker.

(AR 73-76.) The parties agree that the vocational expert erred in testifying that a person with Plaintiff's background and a capacity for a reduced range of unskilled sedentary work could perform the job requirements of an information clerk or an electronic bench assembler. (Doc. No. 10-1 at 8-10; Doc. No. 14-1 at 9-10.) See Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (explaining that if a vocational expert's testimony conflicts with the DOT, he must provide a reasonable explanation for the conflict). But, Plaintiff does not argue that the vocational expert erred in testifying that a person with Plaintiff's residual functional capacity, age, education, and work experience could perform the position of a credit checker. The vocational expert testified that the position of credit checker has 2,000 jobs in the region and 31,000 jobs nationally according to DOT. (AR 75.)

Plaintiff argues that the vocational expert's testimony that Plaintiff was capable of performing one occupation is insufficient to support a finding that other work existed in significant numbers in the national economy. (Doc. No. 10-1 at 11-12.) A vocational expert's testimony that a claimant has the capacity to perform one job within the sedentary category is sufficient, as long as the one occupation still has a significant number of positions that exist in the national economy. See, e.g., Tommasetti, 533 F.3d at 1043-44. The Ninth Circuit has not "set out a bright-line rule for what constitutes a 'significant number' of jobs." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). But, the Ninth Circuit has found a similar number of jobs sufficient. See, e.g., Barker v. Sec'y of Health & Human Serv., 882 F.2d 1474, 1479 (9th Cir. 1989) (finding 1,266 regional positions sufficient); Thomas, 278 F.3d at 960 (finding 1,300 regional positions sufficient); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (finding between 1,000 and 1,500 regional positions sufficient); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (finding 2,300 regional positions sufficient and 64,000 nationwide sufficient). Therefore, for a credit checker, 2,000 regional jobs and 31,000 national jobs constitutes a significant number of positions existing in the national

economy.[8] See id. The Court must uphold the ALJ's decision if either the number of regional or national jobs available is significant. See 42 U.S.C. § 423(d)(2)(A); Beltran, 676 F.3d at 1206. Accordingly, the testimony that Plaintiff could perform the position of credit checker constitutes a "significant number" of positions in the national economy, and supports the ALJ's decision.[9] See Tommasetti, 533 F.3d at 1042-43 (finding error harmless where there was evidence that the claimant could perform other work that exists in "significant numbers" in the national economy).

### C. Determination of Onset Date

Plaintiff argues that the ALJ erred by failing to consult a medical advisor to determine the onset date of Plaintiff's impairments. (Doc. No. 10-1 at 22-24.) In response, Defendant argues that the ALJ was not required to consult a medical advisor to determine the onset date because the ALJ properly determined that Plaintiff was not disabled as defined in the Social Security Act prior to the date she was last insured. (Doc. No. 14-1 at 23-24.)

SSR 83-20 sets forth the guidelines for determining the onset of disability. Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008). "The onset date of disability is defined

---

[8] Plaintiff argues that the ALJ's finding of only one available occupation does not meet the requirement of "significant range" under Rule 202.00(c), citing Lounsburry v. Barnhart, 468 F.3d 1111, 1116-17 (9th Cir. 2006). (Doc. No. 18 at 6-7.) The Ninth Circuit's decision in Lounsburry involved the light work grid rules, not the sedentary grid rules. See 468 F.3d at 1116. Here, the ALJ determined that Plaintiff qualifies for sedentary work. (AR 35.) Therefore, Lounsburry is distinguishable from the present case. See Tommassetti, 533 F.3d at 1043-44 ("Lounsburry is distinguishable because it involved a different grid rule that was based on light exertion (Rule 202.07), whereas this case involves a grid rule based on sedentary exertion (Rule 201.07).")

[9] Plaintiff also argues that the ALJ erred by failing to inquire into the inconsistencies in the vocational expert's testimony. (Doc. No. 10-1 at 10-11.) For an ALJ to rely on the testimony of a vocational expert, the ALJ must inquiry whether the vocational expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1152. Here, the ALJ inquired if the vocational expert's testimony conflicted with the DOT in accordance with Massachi. (AR 73-74.) In addition, even assuming the ALJ's inquiry was insufficient under Massachi, any error was harmless because the vocational expert presented the ALJ with sufficient testimony that did not conflict with the DOT to establish Plaintiff could perform other work that exists in "significant numbers" in the national economy. See Tommasetti, 533 F.3d at 1042-43.

in the ruling as 'the first day an individual is disabled as defined in the Act and the regulations.'" Id. (citing SSR 83-20). "In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." Id. (citing DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir.1991)). When the ALJ explicitly finds that a claimant was not disabled, he does not need to call an expert. Sam, 550 F.3d at 809.

Here, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act prior to September 30, 2000, the date she was last insured. (AR 38.) Therefore, the ALJ was not required to consult a medical expert to assist him in determining a date of onset. See Deberry v. Comm'r of SSA, 352 Fed. Appx. 173, 175 (9th Cir. 2009) ("[B]ecause the ALJ found that DeBerry was not disabled, the need for a medical expert to assist in inferring an onset date did not arise."); Horn v. Astrue, 345 Fed. Appx. 235, 236 (9th Cir. 2009); Bowhay v. Colvin, 2013 U.S. Dist. LEXIS 47698, at *31-32 (C.D. Cal. Mar. 5, 2013).

**Conclusion**

Based on the record, substantial evidence supported the Commissioner's decision. Additionally, the Commissioner based that decision on proper legal standards. Accordingly, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED**.

Dated: August 7, 2013

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT